PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK CONNOLLY, | ) | |
| | ) | CASE NO.  4:23CV1659 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| DR. JOHN DUNLOP, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 25, 33, 34, and 36] |

Pending is Defendants John Dunlop and Donald Cavanaugh's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 25).  Also pending are *Pro Se* Plaintiff Patrick Connolly's Motion for an Extension of Time to Allow the Completion of Discovery (ECF No. 33), Defendants' Motion to Stay Discovery (ECF No. 34), and Plaintiff's "Motion to Add Additional Facts" (ECF No. 36).

## I.  Background

Plaintiff is a federal prisoner incarcerated at FCI Elkton ("Elkton").  Defendant Dr. John Dunlop is the Clinical Director at Elkton.  Defendant Donald Cavanaugh is a Physician Assistant ("PA") at Elkton.  Plaintiff alleges a claim under 42 U.S.C. § 1983 for deliberate indifference to his medical needs.  He asserts that in October 2022, his prescription for Omeprazole (brand name Prilosec), a medication he used to successfully treat gastroesophageal reflux disease ("GERD"),

(4:23CV1659)

was changed to Famotidine (brand name Pepcid/Zantac), a medication that did not work for him.
On November 4, 2022, Plaintiff informed Dr. Dunlop the Famotidine was not working and
requested to be placed back on Omeprazole.  Plaintiff was told on December 5, 2022 that the
prescription for Famotidine would be cancelled, he could purchase Omeprazole or antacids at the
commissary, and he could file an administrative grievance if he did not agree.  According to
Plaintiff, Dr. Dunlop stated that Omeprazole was a non-formulary drug, *i.e.*, a medication not on
the formulary list that medical providers need further approval to prescribe, and was not available
as a prescription.  In addition, Plaintiff claims that on March 31, 2023 Dr. Dunlop removed his
lower bunk pass, which had been issued for lower back pain over eight years prior, in retaliation
for Plaintiff filing a grievance about the GERD medication situation.  Plaintiff seeks equitable
relief, and requests that the Court order that:  (1) he be given medication for GERD that works
for him; (2) his lower bunk pass be reinstated; and (3) he be placed under the care of another
doctor and PA.  He explicitly does not make a request for monetary damages, except for court
costs.  *See* Complaint (ECF No. 1), received for filing on August 25, 2023.

## II.  ECF Nos. 33 and 34

Plaintiff filed a Motion for an Extension of Time to Allow the Completion of Discovery
(ECF No. 33).  Plaintiff asserts that on June 7, 2024, he mailed his final request for discovery
from Defendants.  Because Defendants would have 30 days after being served with written
discovery, Plaintiff requests that the July 1, 2024 fact discovery cutoff date be extended to allow
for Defendants' responses.  *See* Local Rule 16.1(b)(6) (defining "discovery cut-off").

(4:23CV1659)

The day after ECF No. 33 was received for filing, Defendants filed a Motion to Stay

Discovery (ECF No. 34).  Defendants timely filed their Answer (ECF No. 24).  The third

affirmative defense listed is that "Defendants are entitled to qualified immunity." ECF No. 24 at

PageID #: 147.  Defendants also filed a Motion to Dismiss or, in the Alternative, for Summary

Judgment that is based, in part, on Defendant's assertion of qualified immunity.  *See* ECF No.

25-1 at PageID #: 172-74.  That Motion remains pending.  The Court finds that it is appropriate

to suspend discovery until ECF No. 25 is decided.  *See Siegert v. Gilley*, 500 U.S. 226, 231

(1991) (discovery should not be allowed until the threshold immunity question is resolved)

(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

This is so because qualified immunity is not just a defense to liability, but a shield against

the burden of facing trial and "other burdens of litigation," including "broad-reaching discovery."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Skousen v. Brighton High School*, 305 F.3d 520,

526 (6th Cir. 2002).  Therefore, as the United States Court of Appeals for the Sixth Circuit has

established, "[i]f the defendant files a motion to dismiss based on qualified immunity, the court

must 'stay discovery until that issue is decided.' " *In re Flint Water Cases*, 960 F.3d 820, 826

(6th Cir. 2020) (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 299 (6th Cir. 1986)).

### III.  ECF No. 36

On October 7, 2024, the Clerk of Court received for filing Plaintiff's "Motion to Add

Additional Facts" (ECF No. 36).  Plaintiff requests that the Court "take these facts into

consideration when making any ruling." ECF No. 36 at PageID #: 396.  This motion is granted

(4:23CV1659)

in part and denied in part.  The Court will consider any fact(s) offered by Plaintiff in ECF No. 36

that may properly be considered under the Federal Rules of Evidence.

### IV.  ECF No. 25

#### A.  Standards of Review

**1.**     **Motion to Dismiss Under Rule 12(b)(6)**

*Pro se* pleadings generally are liberally construed and held to less stringent standards than

formal pleadings drafted by lawyers, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), but

even a *pro se* complaint must set forth sufficient factual matter, accepted as true, to state a claim

for relief that is plausible on its face to survive dismissal.  *See Hill v. Lappin*, 630 F.3d 468,

470-71 (6th Cir. 2010) (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), for determining a

motion to dismiss under Fed. R. Civ. P. 12(b)(6) governs dismissals for failure to state a claim

under § 1915(e)(2)(B)).

A cause of action fails to state a claim upon which relief may be granted when it lacks

"plausibility in th[e] complaint." *Twombly*, 550 U.S. at 564.  A pleading must contain a "short

and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at

677-78 (quoting Fed. R. Civ. P. 8(a)(2)).  Plaintiff is not required to include detailed factual

allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Id.* at 678.  A pleading that offers "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor does

a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

4

(4:23CV1659)

*Id.* at 557.  It must contain sufficient factual matter, accepted as true, to "state a claim to relief

that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The plausibility standard is not akin to a

"probability requirement," but it asks for more than a sheer possibility that a defendant has acted

unlawfully. *Twombly*, 550 U.S. at 556.  When a complaint pleads facts that are "merely

consistent with" a defendant's liability, it "stops short of the line between possibility and

plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).  "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at

679 (quoting Rule 8(a)(2)).  The Court "need not accept as true a legal conclusion couched as a

factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*,

695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

> **2.**     **Motion for Summary Judgment Under Rule 56(a)**

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  Fed. R. Civ. P. 56(c)(1)(A)

requires a party requesting summary judgment in its favor or an opposing party "to go beyond the

pleadings" and argument, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and cite to

"particular parts of materials in the record, including depositions, documents, electronically

(4:23CV1659)

stored information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials."  The moving party must

"show that the non-moving party has failed to establish an essential element of his case upon

which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp.*

*Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving

party to demonstrate the existence of genuine dispute.  An opposing party may not simply rely on

its pleadings.  Rather, it must "produce evidence that results in a conflict of material fact to be

resolved by a jury."  *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The

non-moving party must, to defeat the motion, "show that there is doubt as to the material facts

and that the record, taken as a whole, does not lead to a judgment for the movant."  *Guarino*, 980

F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in

the light most favorable to the non-moving party when deciding whether a genuine issue of

material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88

(1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242 (1986), stated that in order for a motion for summary judgment to be granted, there must be

no genuine issue of material fact.  *Id.* at 248.  The existence of some mere factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A fact is "material" only if its resolution

will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the

(4:23CV1659)

court must decide whether the evidence is such that reasonable jurors could find that the

non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand

summary judgment, the non-movant must show sufficient evidence to create a genuine issue of

material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a

mere scintilla of evidence in support of the non-moving party's position ordinarily will not be

sufficient to defeat a motion for summary judgment.  *Id.* (citing *Anderson*, 477 U.S. at 252).

"It is well settled that the non-moving party must cite specific portions of the record in

opposition to a motion for summary judgment."  *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130

F.3d 1185, 1191 (6th Cir. 1997); *see also Guarino*, 980 F.2d at 410 ("Neither the trial nor the

appellate court . . . will *sua sponte* comb the record from the partisan perspective of an advocate

for the non-moving party."); Fed. R. Civ. P. 56(c)(1).  "[T]he court is not required to search the

record for some piece of evidence which might stave off summary judgment."  *Id.*  It is also well

settled that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived.  It is not sufficient for a party to mention a

possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness*

*Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir.

1995)).

7

(4:23CV1659)

### 3. Converting a **Rule 12(b)(6)** Motion to a Motion for Summary Judgment

Defendants move to dismiss the Complaint (ECF No. 1) for failure to state a claim upon

which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for

summary judgment under Fed. R. Civ. P. 56. Defendants have attached declarations and exhibits

to the Motion (ECF No. 25) and Reply Memorandum (ECF No. 31) that are outside the scope of

the pleadings. *See* ECF Nos. 25-2, 25-3, 31-1, 31-2, 31-3, and 31-4. "If, on a motion under Rule

12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court,

the motion must be treated as one for summary judgment under Rule 56. All parties must be

given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R.

Civ. P. 12(d); *see also Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104-1105 (6th Cir.

2010). Additional notice is not required when the non-moving party has (1) notice that the Court

may convert a motion to dismiss into one for summary judgment and (2) and the non-movant has

had enough time to produce evidence to refute the moving party's evidence. *See Wysocki*, 607

F.3d at 1105.

Given the facts and circumstances of the case at bar, Plaintiff had notice that the Court

might treat ECF No. 25 as a motion for summary judgment. First, Defendants state in their

Motion that they are moving to dismiss or, in the alternative, for summary judgment. *See* ECF

No. 25 at PageID #: 149. Their Motion also summarizes the legal standard for summary

judgment. *See* ECF No. 25 at PageID #: 162-63. As a result, Plaintiff should not be surprised

that the Court is treating this motion as one for summary judgment. Finally, Plaintiff too had a

(4:23CV1659)

reasonable chance to present materials outside the pleadings.[1]  So the Court considers

Defendants' Motion as a motion for summary judgment.

**B.**

1.    **Administrative Remedies**

The Federal Bureau of Prisons' ("BOP") Administrative Remedy Program is laid out in

28 C.F.R. part 542, subpart B.  The BOP has a three-tiered (or four-tiered if the informal remedy

is counted) system through which a federal prisoner may file a grievance about any conditions of

his imprisonment.  28 C.F.R. §§ 542.10-542.19.  An inmate must first use a form BP-8 to

"present an issue of concern informally to staff, and staff shall attempt to informally resolve the

issue before an inmate submits a Request for Administrative Remedy."  28 C.F.R. § 542.13(a).

An inmate who cannot resolve the problem informally must file "a formal written Administrative

Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date

on which the basis for the Request occurred."  28 C.F.R. § 542.14(a).  The responding authority

is the warden of the inmate's institution, who has 20 calendar days to respond.  28 C.F.R.

§ 542.18.  An inmate not satisfied with the warden's response must appeal that response.  The

Regional Director for the Northeast Region is the relevant recipient of an appeal from Elkton.

The appeal, on a form BP-10, must be filed within 20 calendar days of the warden's signed BP-9

response.  *See* 28 C.F.R. § 542.15(a).  If the inmate is not satisfied with the regional response, the

---

[1]  Plaintiff also attached exhibits to his Memorandum in Opposition to
Defendants' Motion (ECF No. 29) that are outside the scope of the pleadings.  *See* ECF
Nos. 29-1, 29-2, 29-3, 29-4, 29-5, 29-6, 29-7, 29-8, 29-9, 29-10, 29-11, 29-12, 29-13,
29-14, and 29-15.  And he never argued that he could not adequately respond to ECF No.
25.

9

(4:23CV1659)

final step is by filing a form BP-11 to the BOP's General Counsel within 30 calendar days of the

Regional Director's signed response.  *See* 28 C.F.R. § 542.15(a).  The BOP's General Counsel

has 40 calendar days to respond.  28 C.F.R. § 542.18.  The BOP can grant itself an extension of

time to respond at each level, but a failure to timely respond at any level can be taken as a denial

at that level.  *See* 28 C.F.R. § 542.18.  "If the inmate does not receive a response within the time

allotted for reply, including extension, the inmate may consider the absence of a response to be a

denial at that level."  BOP Program Statement 1330.18, *Administrative Remedy Program*, 12.

Response Time § 542.18, at 9 (Jan. 6, 2014) (last visited Nov. 26, 2024).

Consistent with 28 C.F.R. § 542.17(a), "[t]he [Administrative Remedy] Coordinator at

any level ([Community Corrections Manager], institution, regional, Central Office) may reject

and return to the inmate without response a Request or an Appeal that is written by an inmate

that . . . does not meet any other requirement of [the administrative process]."  "When a

submission is rejected, the inmate shall be provided a written notice . . . explaining the reason for

rejection.  If the defect on which the rejection is based is correctable, the notice shall inform the

inmate of a reasonable time extension within which to correct the defect and resubmit the

Request or Appeal."  28 C.F.R. § 542.17(b).  Similarly, if the inmate can demonstrate a valid

reason for the untimely filing at any level of the process, an extension may be allowed.  *See* 28

C.F.R. §§ 542.14(b) and 542.15(a).

**a.**

Plaintiff did not initiate the formal grievance process within 20 calendar days of either the

date his GERD medication was changed (October 2022), the date he informed Dr. Dunlop the

10

(4:23CV1659)

Famotidine was not working and requested to be placed back on Omeprazole (November 4,

2022) or the date he advised medical staff again that the Famotidine was not working and the

Famotidine prescription was cancelled (December 5, 2022).

> A review of Sentry shows that Mr. Connolly filed a request for administrative
> remedy (No. 1149153) [form BP-9] with FCI Elkton on January 26, 2023,
> concerning "I/M Request Medication Change."  That request was rejected as
> untimely that same date.  Mr. Connolly attempted to appeal this denial to the
> Northeast Regional Office [by submitting a form BP-10] on February 10, 2023.
> The Northeast Regional Office concurred with the institution and rejected the
> appeal on March 21, 2023.  The Northeast Regional Office directed Mr. Connolly
> to resubmit his appeal if he could provide verification from staff that untimely
> filing was not his fault.  Mr. Connolly attempted to resubmit his appeal [on a form
> BP-10] to the Northeast Regional Office on April 11, 2023.  That appeal was
> again rejected on May 18, 2023.  Mr. Connolly was instructed he needed to
> address the issue at the institution level.  Mr. Connolly took no further action
> concerning this request for remedy. . . .

Declaration of Robert Jensen (ECF No. 25-3) at PageID #: 187, ¶ 6; *see also* Declaration of Eva

Baker-Dykstra (ECF No. 31-1) at PageID #: 334, ¶ 7.  Thereafter, Plaintiff did not complete the

final step of the grievance process – appeal the Regional Office's decision to the Central Office.[2]

Therefore, Plaintiff did not timely exhaust his administrative remedies regarding the change in

his GERD medication, the cancellation of the Famotidine prescription, or the referral to the

---

[2]  The BOP has no record of receiving Plaintiff's appeal to the Central Office.  *See*
ECF No. 31-1 at PageID #: 334, ¶ 7.  Plaintiff asserts that he completed the BP-11 and
mailed it on April 7, 2023.  *See* ECF No. 29 at PageID #: 266.  But he does not provide
any evidence that the BP-11 was mailed to the Central Office, and certainly no evidence
that it was received by the Central Office.

(4:23CV1659)

commissary for the purchase of Omeprazole or antacids prior to filing a complaint in district court.[3]

### b.

In addition, there is no dispute that Plaintiff did not timely exhaust the administrative remedies for the termination of the lower bunk pass.[4]  His lower bunk designation was rescinded on or about December 8, 2021.  *See* ECF No. 25-2 at PageID #: 177, ¶ 4.  "A review of Sentry

---

[3]  Inmates are permitted to purchase three bottles of Omeprazole at a time, which would be 42 days' worth (14 days per bottle) of medication.  *See* Declaration of Sarah Dees (ECF No. 25-2) at PageID #: 178, ¶ 14.  Plaintiff, however, did not purchase any Omeprazole from the commissary at Elkton during the periods from November 30, 2022 through December 30, 2023 and February 7, 2024 through October 17, 2024.  *See* ECF No. 25-2 at PageID #: 178, ¶ 13 (citing Plaintiff's Commissary Purchases (ECF No. 25-2 at PageID #: 179-185); Declaration of Sarah Dees (ECF No. 37-1) at PageID #: 403, ¶ 4 (citing Plaintiff's Commissary Purchases (ECF No. 37-1 at PageID #: 405-408).  Plaintiff responds that inmates that he does odd jobs, laundry, and cleaning for purchase Omeprazole for him.  *See* Plaintiff's Reply Memorandum (ECF No. 38) at PageID #: 410-11.

Plaintiff also complained during the Telephonic Case Management Conference held on February 21, 2024 that the commissary was out of stock of Omeprazole from January 30, 2024 through February 20, 2024.  Plaintiff apparently has also failed to exhaust available administrative remedies regarding that claim.

[4]  Although Plaintiff is no longer designated as requiring a lower bunk for medical reasons, his lower bunk assignment remained unchanged as of March 28, 2024.  *See* ECF No. 25-2 at PageID #: 177, ¶ 5.

Defendants complied with the pre-filing written exchange required by ¶ 15 of the Case Management Plan (ECF No. 21 at PageID #: 132).  *See* Defendants' Memorandum in Support (ECF No. 25-1) at PageID #: 159.  Plaintiff's Memorandum in Opposition to Defendants' Motion (ECF No. 29), however, does not mention or respond to Defendants' argument that he did not timely exhaust his administrative remedies regarding the revocation of the lower bunk pass.  "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 Fed.Appx. 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 Fed.Appx. 484, 487 (6th Cir. 2011)).

(4:23CV1659)

shows that Mr. Connolly failed to file a request for administrative remedy at FCI Elkton concerning his lower bunk pass." ECF No. 25-3 at PageID #: 188, ¶ 7.  Therefore, Plaintiff did not initiate the grievance process regarding this issue within 20 calendar days thereof.  Nor did Plaintiff initiate the grievance process within 20 calendar days of allegedly speaking with Dr. Dunlop on March 31, 2023 about the revocation of the lower bunk pass.

"An issue is considered exhausted after completion of appeal to the Office of General Counsel." *Giles v. Hemingway*, No. 2:23-cv-10951, 2024 WL 3164653, at *8 (E.D. Mich. May 20, 2024), *report and recommendation adopted*, No. 23-cv-10951, 2024 WL 3540436 (E.D. Mich. July 25, 2024).  "An administrative appeal is not fully exhausted until the BOP's Central Office reaches a decision on the merits." *Cargill v. Healy*, No. 4:23CV1755, 2024 WL 1683600, at *1 (N.D. Ohio March 1, 2024) (citing 28 C.F.R. § 542.15(a)), *report and recommendation adopted*, No. 4:23CV1755, 2024 WL 1676857 (N.D. Ohio April 18, 2024).  "Section 1997e(a) of Title 42 unequivocally requires an inmate to exhaust all administrative remedies before filing a lawsuit charging a violation of civil rights." *Storm v. Bureau of Prisons*, No. 4:08CV1690, 2010 WL 4628666, at *6 (N.D. Ohio Oct. 14, 2010), *report and recommendation addopted*, No. 4:08CV1690, 2010 WL 4628657 (N.D. Ohio Nov. 5, 2010).  Therefore, dismissal without prejudice would be appropriate for failure to exhaust available administrative remedies in compliance with the Prison Litigation Reform Act of 1995, as amended, 42 U.S.C. § 1997e *et seq.* ("PLRA") prior to filing a complaint in district court.  Exhaustion is mandatory, and unexhausted claims cannot be brought before a court.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

(4:23CV1659)

    **2.**    *Bivens* **Claim**

a.

The United States Supreme Court created a right to money damages, as opposed to no remedy at all, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *Bivens* established a limited private right of action against individual federal government officials alleged to have violated a plaintiff's constitutional rights under color of federal law, without the presence of a federal statute explicitly creating a cause of action.  *Id.* at 397.  The Supreme Court decided *Bivens* in 1971, and between 1979 and 1980, it recognized an implied right of action under the Constitution in two additional contexts:  1) under the Fifth Amendment's Due Process Clause for sex discrimination in public employment; and 2) under the Eighth Amendment for federal prisoners for deliberate indifference to medical needs.  *See Minneci v. Pollard*, 565 U.S. 118, 124 (2012) (citing *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); *Carlson v. Green*, 446 U.S. 14, 17-18 (1980)).  "[B]y definition, *Bivens* actions seek monetary damages," *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 527 (6th Cir. 2020) (Moore, J., dissenting) and are "inapplicable to claims seeking equitable relief."  *Id.* at 526, *see also Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities.").  The Complaint (ECF No. 1) only seeks equitable relief, which is not a recognized *Bivens* remedy.  Therefore, Defendants are entitled to judgment as a matter of law.

14

(4:23CV1659)

<b>b.</b>

Failure to provide adequate medical care to a prisoner violates the Eighth Amendment's prohibition against cruel and unusual punishment only when it results from "deliberate indifference" to the prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To make out a claim, a prisoner must demonstrate objective and subjective components.  He must demonstrate both that his medical condition posed a "substantial risk of serious harm" to him, and that a prison official acted with deliberate indifference as to that risk.  *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "Deliberate indifference is characterized by obduracy or wantonness – it cannot be predicated on negligence, inadvertence, or good faith error."  *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citation omitted).  "Thus, to prove the required level of culpability, a plaintiff must show that the official:  (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk."  *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (citations omitted).

Plaintiff's allegations fail to demonstrate a plausible claim that either Defendant was "deliberately indifferent" to his medical needs within the meaning of the Eighth Amendment.  Rather, the allegations in the Complaint (ECF No. 1) and the memoranda regarding ECF No. 25 make clear that Plaintiff has been seen and evaluated by prison medical staff and that Elkton prison officials determined, based on tests administered to him, that Plaintiff could purchase over-the-counter ("OTC") antacid medication, which includes Omeprazole, at the commissary to be taken as needed.  Even though Plaintiff disagrees with the prison medical staff's assessment of

15

(4:23CV1659)

his condition, it is well-established that a prisoner's disagreement with the level of testing or

treatment he receives does not rise to the level of a constitutional violation.  *See Mitchell v.*

*Hininger*, 553 Fed.Appx. 602, 604 (6th Cir. 2014) (citation omitted) (stating that when a prisoner

has received some medical treatment, in order to state a constitutional claim, he must show that

his treatment was "so woefully inadequate as to amount to no treatment at all"); *Dodson v.*

*Wilkinson*, 304 Fed.Appx. 434, 440 (6th Cir. 2008) (finding plaintiff's disagreement with the

testing and treatment he had received since being diagnosed with Hepatitis C did not rise to the

level of an Eighth Amendment violation); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1

(6th Cir. Oct. 29, 1996) ("differences in judgment between an inmate and prison medical

personnel regarding appropriate medical diagnosis or treatment are not enough to state a

deliberate indifference claim").  Moreover, when as here, "a prisoner has received some medical

attention and the dispute is over the adequacy of the treatment, federal courts are generally

reluctant to second guess medical judgments and to constitutionalize claims which sound in state

tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976); *see also Hill v. Fed. Bureau*

*of Prisons*, No. 2:18-cv-02385-MSN-tmp, 2019 WL 13414472, at *4 (W.D. Tenn. June 18,

2019) (holding plaintiff's disagreements about the specific treatment received for his skin

condition would not create a basis for liability).  And allegations of medical malpractice or

negligent diagnosis and treatment are insufficient to state an Eighth Amendment  claim.

*Jennings v. Al-Dabagh*, 97 Fed.Appx. 548, 549-50 (6th Cir. 2004).

Plaintiff does not meet the objective requirement for deliberate indifference.  Defendants

do not dispute that he had a GERD medical condition in 2020 that required attention.  The

(4:23CV1659)

surgeon at Salem Regional Medical Center, who performed the esophagogastroduodenoscopy

(EGD) in January 2020, wrote a report that states his findings, in relevant part: "[a] small hiatal

hernia was present" and "[l]ocalized mild inflammation . . . was found in the gastric antrum and

in the prepyloric region of the stomach." ECF No. 29-9 at PageID #: 298.  The surgeon

recommended treatment in the form of Omeprazole for three months.  ECF No. 29-9 at PageID

#: 298.  There is no dispute that the BOP provided Plaintiff the recommended treatment.

Plaintiff was also prescribed Famotidine on December 28, 2021 and May 25, 2022.  *See* BOP

Active Prescriptions (ECF No. 29-11 at PageID #: 306-307).  Plaintiff has not established that he

continues to have a serious medical condition that requires a specific treatment.[5]

Assuming *arguendo* that Plaintiff continued to have a serious medical condition after the

EGD in 2020, Defendants alleged acts and/or omissions are not sufficiently harmful to evidence

deliberate indifference to a medical need.  Defendants have provided appropriate medical care.

Following the completion of the recommended medical treatment in the form of Omeprazole for

three months, Plaintiff's medical condition continued to be monitored.  In June 2022, Dr. Dunlop

recommended Plaintiff undergo another EGD to objectively determine the current medical status

---

[5]  Long term use of proton-pump inhibitor ("PPI") therapy when contraindicated also has the risk of adverse effects.  *See* ECF No. 25-2 at PageID #: 178, ¶ 16 (On March 5, 2023, "Plaintiff was informed that long term PPI therapy when contraindicated comes with the possibility of adverse effects."); BOP Administrative Note dated Dec. 5, 2022 (ECF No. 29-12 at PageID #: 310) ('[Plaintiff] has been on PPI therapy longer than what was recommended and it is no longer indicated."); U.S. Food & Drug Administration. Low Magnesium Levels Can Be Associated with Long-Term Use of Proton-Pump Inhibitor Drugs (PPIs).  Drug Safety Communication March 2, 2011 (last visited Nov. 26, 2024).

(4:23CV1659)

of his GERD condition.  *See* BOP Administrative Note dated June 24, 2022 (ECF No. 29-10 at PageID #: 302); *see also* Dr. Dunlop's Responses to Interrogatory Nos. 6 and 7 (ECF No. 31-2 at PageID #: 359); PA Cavanaugh's Response to Interrogatory No. 5 (ECF No. 31-3 at PageID #: 369).  But Plaintiff refused.  *See* ECF No. 25-2 at PageID #: 177, ¶ 7; BOP Administrative Note dated June 23, 2022 (ECF No. 29-10 at PageID #: 303-304).[6]  On October 25, 2022, Plaintiff was prescribed Famotidine as a replacement for Omeprazole during a Chronic Care Clinic encounter.  *See* BOP Active Prescriptions (ECF No. 29-11 at PageID #: 306); BOP Administrative Note dated Dec. 5, 2022 (ECF No. 29-12 at PageID #: 310).  The prescription was in effect for less than two months when it was cancelled by PA Cavanaugh on December 5, 2022, after Plaintiff repeatedly stated Famotidine was not working.  Plaintiff was advised he could purchase OTC antacid medication, which includes Omeprazole, at the commissary to be taken as needed.  *See* BOP Administrative Note dated Dec. 5, 2022 (ECF No. 29-12 at PageID #: 310); Declaration of Sarah Dees (ECF No. 31-4) at PageID #: 379, ¶ 5.[7]

---

[6]  Plaintiff relies on *Goodloe v. Sood*, 947 F.3d 1026 (7th Cir. 2020), to argue he has established deliberate indifference.  *See* ECF No. 29 at PageID #: 270.  The Court agrees with Defendants that *Goodloe* is distinguishable.  *See* ECF No. 31 at PageID #: 327-28.  There, Dr. Sood saw the plaintiff numerous times, began a course of treatment Dr. Sood acknowledged resulted in "no improvement" to the plaintiff, and Dr. Sood concluded that the plaintiff needed to see an outside specialist but took no steps to ensure that happened.  *Goodloe*, 947 F.3d at 1031.  Those are not the facts here.

[7]  Plaintiff declares he was advised that Omeprazole was not available at the commissary until May 2023.  *See* ECF No. 29 at PageID #: 271.  He supports this assertion with an attached "Inmate to Staff" email (ECF No. 29-14).  It is unclear who allegedly wrote the email response, the authenticity thereof, and/or the basis of the person's knowledge.  According to Defendants, the Elkton commissary began selling Omeprazole (Prilosec) on February 1, 2023.  Prior to that date, other OTC antacids were

(continued...)

(4:23CV1659)

Thereafter, Defendants continued to order laboratory tests and monitored Plaintiff's lab

results to assess his condition.  *See* Dr. Dunlop's Responses to Interrogatory Nos. 10 and 11

(ECF No. 31-2 at PageID #: 359); PA Cavanaugh's Responses to Interrogatory Nos. 10 and 11

(ECF No. 31-3 at PageID #: 369).  Defendants provided a recommended course of treatment –

the purchase of antacids, including Omeprazole – albeit at Plaintiff's expense.  The BOP denied

Plaintiff's request that the BOP provide Omeprazole because he is not indigent.  *See* ECF No.

25-2 at PageID #: 177, ¶ 12.  Requiring an inmate to purchase medication is not a constitutional

violation.  *Slattery v. Mohr*, No. 2:11-CV-202, 2012 WL 2931131, at *8 (S.D. Ohio July 17,

2012) (citing *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997) ("If a prisoner is able to pay

for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.'

") (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993))).

Furthermore, Plaintiff acknowledges that on March 31, 2023, a Non-formulary Drug

Authorization request (ECF No. 29-15) was submitted to the Institutional Chief Pharmacist and

then the Central Office Pharmacist on his behalf to determine if he qualified medically and

financially for Omeprazole at the BOP's expense.  *See* ECF No. 1 at PageID #: 8.  The request

was denied because the medication was not clinically indicated and Plaintiff was not indigent.

*See* ECF No. 25-2 at PageID #: 177, ¶ 12.  Plaintiff has not come forward with sufficient

evidence to establish the objective component of a claim for deliberate indifference to a serious

---

[7](...continued)
available.  *See* ECF No. 31-4 at PageID #: 379, ¶ 7.  Plaintiff does not dispute that other
antacids were available, nor, as stated above, does he dispute that he has not purchased
antacids, including Omeprazole, since being referred to the commissary.

19

(4:23CV1659)

medical need. He also cannot satisfy the subjective component of a deliberate indifference claim because Defendants did not disregard a known risk to his health. *See Farmer*, 511 U.S. at 837-38; *Martin v. Warren Cnty., Ky.*, 799 Fed.Appx. 329, 337 (6th Cir. 2020). The medical care Defendants provided to Plaintiff was appropriate and was not deliberately indifferent to a serious medical need. Therefore, Plaintiff has not established that Defendants violated his Eighth Amendment rights.

**c.**

Finally, a *Bivens* claim premised upon allegations that Defendants violated a BOP Program Statement by referring Plaintiff to the commissary to purchase Omeprazole, *see* ECF No. 1 at PageID #: 9-10, fails as a matter of law. Alleged non-compliance with BOP Program Statements is not a basis for *Bivens* liability. They do not create any substantive rights, and standing alone, a violation thereof does not constitute a violation of a constitutional or statutory right. *Christensen v. United States*, No. 5:11-321-KKC, 2013 WL 4521040, at *2 (E.D. Ky. Aug. 26, 2013) ("[Program Statements] do not create substantive rights that may be enforced by any person.") (citing *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990); *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)).

**3.    Qualified Immunity**

Once a defendant sued in her individual capacity raises qualified immunity, the burden shifts to the plaintiff, who must demonstrate both that the official violated a constitutional or statutory right, and that the right was so clearly established at the time of the alleged violation that every reasonable official would have understood that what he was doing violated that right.

20

(4:23CV1659)

*Ashcroft v. al-Kidd*, 563 U.S 731, 741 (2011). If the plaintiff fails to carry this burden as to either element of the analysis, qualified immunity applies and the official is immune. *Cockrell v. City of Cincinnati*, 468 Fed.Appx. 491, 494 (6th Cir. 2012). "Clearly established law" should not be defined "at a high level of generality" and the clearly established law must be "particularized" to the facts of the case. *Ashcroft*, 563 U.S. at 742; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In *Saucier v. Katz*, the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity. 533 U.S. 194, 201 (2001). The Court must consider (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and (2) whether that right was clearly established. *Id.* In *Pearson v. Callahan*, the Supreme Court held that while the sequence set forth in *Katz* is often appropriate, it is not mandatory, and courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first. 555 U.S. 223, 236 (2009); *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 485 (6th Cir. 2007) (if a plaintiff is "unable to establish sufficient facts to support a finding of a constitutional violation by the defendant, the inquiry ceases, and the court must award judgment to the defendant"). The Court does not address the qualified immunity argument of Defendants because it concludes for the reasons set forth above that Plaintiff has not sustained his burden to demonstrate a deprivation of constitutional rights regarding his Eighth Amendment deliberate indifference claim.

(4:23CV1659)

## V. Conclusion

For all of the foregoing reasons, Defendants's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 25) is granted. Plaintiff's "Motion to Add Additional Facts" (ECF No. 36) is granted in part and denied in part. The Complaint (ECF No. 1), as supplemented by the fact(s) offered by Plaintiff in ECF No. 36 that may properly be considered under the Federal Rules of Evidence, fails to state a claim upon which Plaintiff may be granted relief and is dismissed with prejudice. Defendants' Motion to Stay Discovery (ECF No. 34) is granted. Plaintiff's Motion for an Extension of Time to Allow the Completion of Discovery (ECF No. 33) is denied as moot. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.


IT IS SO ORDERED.


___November 26, 2024___                    ___/s/ Benita Y. Pearson___
Date                                       Benita Y. Pearson
                                           United States District Judge

22